Wilfred A. Waltemade, J.
The issue before the court is whether the provisions of chapter 1161 of the Laws of 1971, effective July 6, 1971, are remedial or substantive, and whether this legislation should be applied retroactively to condemnation proceedings instituted prior to the effective date of the law, as contended by the claimants, or whether the provisions should be given only a prospective construction as urged by the City of New York.
A determination of whether the changes in the quantum of the advance payments to be made to claimants in condemnation is a remedial or substantive modification of the law appears to be one of first impression. The retroactive application of the *1020 cited section has been passed upon at least twice before by a trial court (Matter of Incorporated Vil. of Great Neck Plaza, 69 Misc 2d 262: Matter of Town of North Hempstead, 70 Misc 2d 350; Matter of City of New York [William St., Maiden Lane and Liberty St., Block 68], N. Y. L. J. May 22, 1972, p. 2, col. 5).
The movants, who are the owners in fee and claimants of Damage Parcel No. 1 in this condemnation proceeding, seek an order, pursuant to the cited chapter, directing the condemnor, the City of New York, to pay them, on account of movants’ claim of just compensation, the total amount of the condemnor’s appraisal of the fair market value of Damage Parcel 1. This application is made now, without prejudice to the subsequent trial of the issue of full and just compensation for the taken premises.
Title to the damage parcel vested in the City of New York pursuant to an order of condemnation signed and filed on April 14, 1969. The movants duly filed their claim for an award on July 29, 1969 and their affidavit of title on November 24, 1969. A note of issue placing this proceeding on the trial calendar was served on September 8, 1969. Subsequent thereto, an advance payment of $200,000. which did not represent the full amount of the city’s appraised value of Damage Parcel No. 1 was made available and was paid on May 19, 1970 to the first mortgagee, whose lien on the parcel was prior to the claim of the owner. No further payment has been made available.
Chapter 1161 of the Laws of 1971 was enacted as a result of the recommendations made by the State Commission on Eminent Domain expressed in its interim report to the Governor, dated February 1,1971. That report (VI. Recommended Legislation for 1971 Legislature, p. 14), so far as pertinent to this application, reads as follows: “(a) Advance Payment: Based on recommendations made by participants at the New York City hearing and by the Commission’s study in this area, a requirement for an advance payment of 100% of the condemnor’s offer for the value of the property to be acquired, should be authorized by statute. It is felt that this requirement will alleviate those situations where an advance payment of only 75%, as is now the requirement in a majority of acquisitions, is only capable of paying off a secured interest on the property, leaving the owner with little or no funds for investing in replacement property prior to receiving an award for his property. Since the delay in receiving this award can be rather lengthy, the property owner suffers great hardships. It is recommended that this statute provide that in all eminent domain proceedings in which the condemnor acquires title or pos *1021 session prior to the adjudication of the compensation due the property owner, the condemnor shall pay to the property owner the full compensation it .estimates to be due the property owner. In no event shall such amount be less than the condemnor’s approved appraisal of the fair market value of such property.” (Italics supplied).
It is interesting to note that the language of chapter 1161 remarkably parallels that found in the report, and as far as pertinent, reads as follows: “Section 1. In order to assure consistent treatment for property owners whose property is acquired by exercise of the power of eminent domain by the state or the political subdivisions thereof, or by any other corporation authorized by statute to acquire property by eminent domain proceedings, and to alleviate the hardships of an owner in financing the purchase or rental of replacement property or by alteration of remaining property, it is enacted as follows:
“ 1. Notwithstanding the provisions of any general or special statute of the state of New York or of any local law or ordinance of any municipality within the state, in all eminent domain proceedings brought by the state, or any political subdivision thereof, or by any corporation authorized by statute to acquire private property by exercise of the power of eminent domain, in which title vests in the condemnor prior to the adjudication and payment of the compensation due the owner thereof, or wherein possession is sought by the condemnor prior to the vesting of title, and the amount of the claim for legal damages caused by such acquisition cannot be agreed upon, the condemnor shall offer to pay to the property owner the full amount determined by the ■condemnor to be the value of such claim for legal .damages. In no event shall the amount of such offer be less than the condemnor’s approved appraisal of the fair market value of such property.” (Italics supplied).
The City of New York contends that chapter 1161 created a substantive right rather than a procedural remedy and therefore must be construed as having only a prospective operation. Remedial statutes are those designed to correct imperfections in the prior law and to cure a wrong where an aggrieved party had an ineffective remedy under existing statutes (Matter of Mlodozeniec v. Worthington Corp., 9 A D 2d 21, affd. 8 N Y 2d 918, cert. den. 364 U. S. 628). As a general rule, remedial statutes constitute an exception to the rule that statutes are not to be given a retroactive operation since they are to be liberally construed to spread their beneficial results as widely as possible and the retroactive application of such statutes is constitutional *1022 (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 231; Matter of Mlodozeniec v. Worthington Corp., supra; Shielcrawt v. Moffett, 294 N. Y. 180).
The history of the proceedings in condemnation has established that the advance payments made were generally only sufficient to pay off the mortgage liens on the property taken, leaving the owner with little or no funds for investment in replacement property or the alteration of his remaining property, prior to the receipt of the final award. Delays in the payment of the final award were usually lengthy, compelling the condemnee to assume an unnecessary financial burden. Chapter 1161 was enacted for the purpose, as expressed in section 1, to alleviate this burden from the innocent owners whose property is acquired for a public purpose by the exercise of the power of eminent domain. Nothing in the language of the report, or in chapter 1161, can be so construed to suggest that the beneficial purposes of the law were to be limited to claimants in condemnation proceedings commenced after the effective date of the new statute.
It is clear to this court from the wording of chapter 1161 that it is applicable to all eminent domain proceedings in which title vests in the condemnor prior to adjudication and payment of the final award to the owner of such property; that it was intended to insure consistent and equal treatment to all claimants whose property is acquired in condemnation and, that it was intended to alleviate the hardship of all qualifying owners in financing the purchase or rental of replacement property or by the alteration of any remaining property. Words of limitation are simple of expression and the.Legislature would have included such language if that had been its intention.
Every claimant in a pending condemnation proceeding should come under the umbrella of this legislation which the court finds -is remedial in nature and not substantive. It is remedial because it regulates the quantum of the advance payment. It does not fix the final award which can only be determined by the court after a trial of the issues. The issue of fair and just compensation ” is not in any way affected by a condemnor’s payment of 100% of its appraised value of the condemned property. The amount of the advance payment is predicated solely on the condemnor’s appraisal uninfluenced by the claimant’s appraisal. This legislation seeks, as already expressed herein, to remove a financial burden which condemnees have heretofore borne, pending a court adjudication of the fair and just compensation ” to which they are entitled. The Legislature in its wisdom enlarged *1023 the advance payment to be made available to those whose property is taken by the exercise of the sovereign’s power of eminent domain.
Heretofore, the City of New York had the power to make an advance payment not exceeding 85% of the appraisal made by the city’s experts (Administrative Code of City of New York, § B15-29.0). However, experience has demonstrated that this provision was insufficient because in most instances the moneys due on encumbrances about equalled the advance payment. The new relief provides a source of interim funding which a claimant may use while awaiting the payment of the final award. No substantive right of the condemnor or condemnee is involved by the increase in the advance payments.
Finally, the effect of chapter 1161 is to supersede the provision of Administrative Code (§ B15-29.0), which recites the existing discretionary powers of the City of New York and its officers, relative to the quantum of the advance payments.
The court determines that, beginning on July 6, 1971 — the effective date of chapter 1161 — in all eminent domain proceedings in which title has already vested in the condemnor, and in which no final award has as yet been made, and in those instances where an advance payment which has already been made does not equal the condemnor’s approved appraisal of the fair market value of the property taken, the city is now obligated to make the full payments available to the claimants in compliance with the new State statute. To conclude otherwise would be to obfuscate the plain and unequivocal language of the statute. It is illogical to suggest that the Legislature intended that the property owner, title to whose property was acquired by a condemnor on July 5, 1971, one day prior to the effective date of chapter 1161, would be restricted to an advance payment less than the full appraised value determined by the condemnor, whereas the owner who was divested pf his title on July 6,1971 would receive a larger advance payment provided by the new statute. There is no basis for concluding that the Legislature intended such discrimination.
An intent patently absurd is not to be attributed to the Legislature and it will be presumed that the Legislature did not intend an absurd result to ensue from the legislation enacted (Matter of Alro Liq. v. New York State Liq. Auth., 29 A D 2d 271).
The court finds that the movants qualify in every particular and they are entitled to the benefits of chapter 1161 of the Laws of 1971. Accordingly, the motion is granted in all respects.
*1024 Settle order providing for the payment of the difference Between the sum of $200,000 already paid, and the full amount of the City of New York’s approved appraisal of the fair market value of Damage Parcel No. 1. The order shall further provide for the payment of accrued interest, at the legal rate, on said sum from the date of vesting of title to the date on which such additional funds are made available.